Andrew Shamis
AZ Bar No. 037343
*ashamis@shamisgentile.com*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Telephone: 305.479.2299
*Attorney for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **ADAM VOELKER**, individually, and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **1. Negligence** |
| | **2. Negligence** *per se* |
| **ENROLL CONFIDENTLY, INC.,** | **3. Breach of Implied Contract** |
| Defendant. | **4. Invasion of Privacy** |
| | **5. Breach of Fiduciary Duty** |
| | **6. Violation of the California Unfair Competition Law** |
| | **7. Violation of the California Consumer Records Act** |
| | **8. Declaratory Judgement** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Adam Voelker ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against Defendant Enroll Confidently, Inc., ("Enroll Confidently" or "Defendant") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel as follows:

## I.     INTRODUCTION

1.     Plaintiff seeks monetary damages and injunctive and declaratory relief arising from Defendant's failure to safeguard the Personally Identifiable Information[1] ("PII") and Protected Health Information ("PHI") (together, Private Information") of Plaintiff and Class members, which resulted in unauthorized access to its information systems on or around February 13, 2024 and the compromised and unauthorized disclosure of that Private Information, causing widespread injury and damages to Plaintiff and the proposed (defined below) members.

2.     Defendant, Enroll Confidently, Inc., is a Delaware corporation offering a benefits enrollment platform to employers and benefits providers[2].

---

[1] The Federal Trade Commission ("FTC") defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."17 C.F.R. § 248.201(b)(8). To be clear, according to Defendant, not every type of information included in that definition was compromised in the subject data breach.

[2] https://www.enrollconfidently.com (last accessed May. 23, 2024)

3.      As explained in detail herein, Defendants detected unusual activity in its computer systems and ultimately determined that an unauthorized third party accessed its network and obtained certain files from its systems on or around February 13, 2024 ("Data Breach").[3]

4.      As a result of the Data Breach, which Defendant failed to prevent, the Private Information of Plaintiff and the proposed Class members, was stolen, including their names, addresses, dates of birth, Social Security numbers, and medical information.[4]

5.      Defendant's investigation concluded that the Private Information compromised in the Data Breach included Plaintiff's and other Class Members information (together, "Clients").

6.      Defendant's failure to safeguard Plaintiff and Class Members' highly sensitive Private Information as exposed and unauthorizedly disclosed in the Data Breach violates its common law duty, California law, and Defendant's implied contract with Clients to safeguard their Private Information.

7.      Plaintiff and Class members now face a lifetime risk of identity theft due to the nature of the information lost, which they cannot change, and which cannot be made private again.

---

[3] Notice of Data Breach Letter attached hereto as **Exhibit A**.
[4] *Id.*

CLASS ACTION COMPLAINT

8.    Defendant's harmful conduct has injured Plaintiff and Class members in multiple ways, including: (i) the lost or diminished value of their Private Information; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive Private Information.

9.    Defendant's failure to protect Plaintiff and Class Members' Private Information has harmed and will continue to harm thousands of Defendant's Clients, causing Plaintiff to seek relief on a class wide basis.

10.    On behalf of himself and the Class preliminarily defined below, Plaintiff brings causes of action against Defendant for negligence, negligence *per se*, breach of implied contract, invasion of privacy, breach of fiduciary duty, violation of the California Unfair Competition Law, and violation of the California Consumer Records Act, seeking an award of monetary damages and injunctive and declaratory relief, resulting from Defendant's failure to adequately protect their highly sensitive Private Information.

## II.    JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy

exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, and at least one Class member is a citizen of a state that is diverse from Defendants' citizenship, including Plaintiff, a citizen of California. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12.    This Court has personal jurisdiction over Defendant, Enroll Confidently, Inc., because it has its principal place of business in Arizona, and does a significant amount of business in Arizona.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant has its principal place of business located in this District, and a substantial part of the events giving rise to this action occurred in this District.

### III.   PARTIES

14.    Plaintiff is an individual citizen of California and learned of the breach after seeing receiving a Notice of Data Breach dated April 26, 2024. Plaintiff is a Client of Defendant.

15.    Defendant Enroll Confidently, Inc., is a corporation organized under the laws of Delaware with its headquarters and principal place of business 13924 E Dyer Ln, Unit 4020, Scottsdale, AZ 85262.

### IV.   FACTUAL ALLEGATIONS

*Defendant's Business*

16.    According to Defendant's website:

> Enroll Confidently provides a platform to manage the employee lifecycle from onboarding, enrollment in benefits all the way through the last day of employment with an emphasis on helping you manage employee data between payroll and the carriers.[5]

17.    Plaintiff and Class members are current or former Clients who provided their Private Information to receive employee related benefits from Defendant.

18.    Prior to receiving services from Defendant, Plaintiff and Class Members were required to and did, in fact, turn over their Private Information.

19.    The information held by Defendant at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class members.

20.    Upon information and belief, Defendant made promises and representations to its Clients that the Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

21.    Plaintiff and Class members provided their Private Information to the Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[5] https://www.enrollconfidently.com (last accessed May 23, 2024).

5

22.     Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

23.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendant has a legal duty to keep Clients' Private Information safe and confidential.

24.     Defendant had obligations under the FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

25.     Defendant derived a substantial economic benefit from collecting Plaintiff's and Class members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

CLASS ACTION COMPLAINT

26.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

***The Attack and Data Breach***

27.     On or about April 26, 2024, Defendant began notifying Clients of the Data Breach, informing them by Notice of Data Breach ("Notice")[6]:

> **What Happened?** On February 13, 2024, we became aware of unusual system activity within our network. We promptly took steps to secure our systems and began a comprehensive investigation to determine what happened and what information may be affected. Through this investigation, we learned that an unauthorized actor gained access to our network on February 13, 2024, and copies certain files from our system as part of a cybersecurity event. We are undertaking a detailed review of the relevant files to confirm what information is present and to whom it relates. Through that review, we recently determined that your information was present in the relevant files.
>
> **What Information Was Involved?** Our investigation determined that your Name, Address, Date of birth, Social Security number, and medical information were affected by this incident.

28.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

---

[6] Exhibit A.

CLASS ACTION COMPLAINT

29.     The attacker accessed and acquired files in Defendant's computer systems containing unencrypted Private Information of Plaintiff and Class members, including their names, addresses, dates of birth, Social Security numbers, and medical information. Plaintiff's and Class members' Private Information was accessed and stolen in the Data Breach.

30.     Plaintiff further believes his Private Information, and that of Class members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### The Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information

31.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class members' Private Information, Defendant would be unable to perform its services.

32.     By obtaining, collecting, and storing the Private Information of Plaintiff and Class members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

33.     Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their

Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

34.  Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class members.

35.  Upon information and belief, Defendant made promises to Plaintiff and Class members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

36.  Defendant's negligence in safeguarding the Private Information of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

### *Defendant Failed to Comply with FTC Guidelines*

37.  The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

38.  In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that

is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[7]

39.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[8]

40.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

41.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to

---

[7] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Feb. 27, 2024).

[8] *Id.*

CLASS ACTION COMPLAINT

confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.     These FTC enforcement actions include actions against healthcare entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

43.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

44.     Defendant failed to properly implement basic data security practices.

45.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Clients' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act,15 U.S.C. § 45.

*Defendant Failed to Comply with HIPAA Guidelines*

46.     Defendant is covered businesses under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

47.     Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[9] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

48.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

49.     HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

---

[9] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

50.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

51.    "Electronic protected health information" is "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

52.    HIPAA's Security Rule requires Defendant to do the following:

   a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

   b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

   c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

   d.    Ensure compliance by its workforce.

53.    HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or

software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

54.     HIPAA and HITECH also obligates Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

55.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. See 45 C.F.R. § 164.530(e).

56.     HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

57.     HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and

appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[10] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[11]

### Defendant Owed Plaintiff and Class Members a Duty to Safeguard their Private Information

58.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class members.

---

[10] https://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last accessed Feb. 13, 2024)
[11] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last accessed Feb 27, 2024).

59.     Defendant owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

60.     Defendant owed a duty to Plaintiff and Class members to implement processes that would detect a compromise of Private Information in a timely manner.

61.     Defendant owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

62.     Defendant owed a duty to Plaintiff and Class members to disclose in a timely and accurate manner when and how the Data Breach occurred.

63.     Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

***The Data Breach Increases Plaintiff's and Class members' Risk of Identity Theft***

64.     The unencrypted Private Information of Plaintiff and Class members will end up (if it has not already ended up) for sale on the dark web, as that is the *modus operandi* of hackers.

65.     Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class members.

66.     Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class members because of the Data Breach.

67.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

68.     Plaintiff's and Class members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class members and to profit from their misfortune.

***Loss of Time to Mitigate the Risk of Identity Theft and Fraud***

69.     As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

70.    Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class members must monitor their financial accounts for many years to mitigate the risk of identity theft.

71.    Plaintiff and Class members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

72.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[12]

73.    Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[13]

---

[12] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Feb. 27, 2024).

[13] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last accessed Feb 27, 2024).

74.    And for those Class members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

***Diminution of Value of Private Information***

75.    Private Information is valuable property.[14] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

76.    The Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach is difficult, if not impossible, to change.

77.    This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal,

---

[14] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed Feb. 27, 2024) ("GAO Report").

CLASS ACTION COMPLAINT

explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[15]

78.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[16]

79.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[17] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[18,19] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[20]

80.    As a result of the Data Breach, Plaintiff's and Class members' Private

---

[15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Feb. 27, 2024).

[16] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[17] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed Feb. 27, 2024).

[18] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed Feb. 27, 2024).

[19] https://datacoup.com/ (last accessed Feb. 27, 2024).

[20]https://www.thepennyhoarder.com/make-money/nielsenpanel/#:~:text=Sign%20up%20to%20join%20the,software%20installed%20on%20your%20computer (last accessed Feb. 27, 2024).

Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

81.    The fraudulent activity resulting from the Data Breach may not come to light for years.

82.    Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

83.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

84.    The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

CLASS ACTION COMPLAINT

***The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary***

85.     Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

86.     Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

87.     Consequently, Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future.

88.     The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor and protect Class members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that

Plaintiff and Class members would not need to bear, but for Defendant's failure to safeguard their Private Information.

### Loss of the Benefit of the Bargain

89.     Furthermore, Defendant's poor data security deprived Plaintiff and Class members of the benefit of their bargain. When seeking care from Defendant, Plaintiff and other reasonable clients understood and expected that they were, in part, paying for the service and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### Plaintiff's Experience

90.     Plaintiff enrolled for employee benefits through Defendant. To obtain these benefits, he was required to provide his Private Information.

91.     Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

92.     Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

93.    Plaintiff learned of the data breach after reviewing the Notice. According to the Cybersecurity, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties. The Private Information comprised his name, address, date of birth, Social Security number, and medical information.

94.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including checking his bills and accounts to make sure they were correct. Plaintiff has spent significant time dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

95.    As a result of the Data Breach, Plaintiff discovered several unauthorized transactions on his credit cards.

96.    As a result of the Data Breach, Plaintiff fears for his personal financial security and uncertainty over what medical information was revealed in the Data Breach. He is experiencing feelings of anxiety, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

97.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

98.    As a result of the Data Breach, Plaintiff is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

99.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## V.    CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3), on behalf of a class defined as:

**Nationwide**: All individuals whose PII and/or PHI was accessed and/or acquired by an unauthorized party in the Data Breach, including all who were sent a notice of the Data Breach.

**California Subclass**: All residents of California, Defendant has identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class")

101.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as

their immediate family members.

102.    Plaintiff reserves the right to amend the definition of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

103.    Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Upon information, thousands of individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

104.    Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

> a.  Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class members;
>
> b.  Whether Defendant had respective duties not to disclose the Private Information of Plaintiff and Class members to unauthorized third parties;
>
> c.  Whether Defendant had respective duties not to use the Private Information of Plaintiff and Class members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class members;

e.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g.  Whether Plaintiff and Class members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct; and

h.  Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

105.  Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.

106.  This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with

respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

107.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

108.    Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

109.    Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have

no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

110.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

111.    Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

a.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

b.  Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

c.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d.  Whether Defendant's failure to institute adequate protective security measures amounted to breach of an implied contract;

e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.  Whether adherence to HIPAA and FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

112.  Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.   CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and all Class Members)

113.  Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

114.  Defendant requires its Clients, including Plaintiff and Class members, to submit non-public Private Information in the ordinary course of providing employee benefit services.

115.   Defendant gathered and stored the Private Information of Plaintiff and Class members as part of its business.

116.   Plaintiff and Class members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

117.   Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed.

118.   By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

119.   Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health

information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

120.   Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

121.   Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class members. That special relationship arose because Plaintiff and Class members entrusted Defendant with their confidential Private Information, a necessary part of being Clients of Defendant.

122.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

123.   Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

124.   Defendant breached its duties, thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific

negligent acts and omissions committed by Defendant include, but are not limited to, (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information; (b) failing to adequately monitor the security of their networks and systems; and (c) allowing unauthorized access to Class members' Private Information.

125.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

126.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' Private Information would result in injury to Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

127.   Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed.

128.   Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class members, the critical importance of providing adequate security

of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

129.  It was therefore foreseeable that the failure to adequately safeguard Class members' Private Information would result in one or more types of injuries to Class members.

130.  Plaintiff and Class members had no ability to protect their Private Information that was in, and likely remains in, Defendant's possession.

131.  Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

132.  Defendant's duty extended to protecting Plaintiff and Class members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

133.  Defendant has admitted that the Private Information of Plaintiff and Class members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

134.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the Private Information of Plaintiff and Class members would not have been compromised.

135.   There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The Private Information of Plaintiff and Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

136.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

137.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

138.   Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

139.   Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

140.   Plaintiff and Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (On behalf of Plaintiff and all Class Members)

141.   Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

142.   Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

143.   Pursuant to HIPAA, 42 U.S.C. § 1302d *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information.

144.   Pursuant to HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* definition of encryption at 45 C.F.R. § 164.304.

145.   Defendant breached its duties to Plaintiff and Class members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

146.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

147.    The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the statutes described herein.

148.    Plaintiff and Class members were within the class of persons the Federal Trade Commission Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

149.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

150.    The injuries and harms suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Private Information.

151.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injuries and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and all Class Members)

152.    Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

153.    Defendant offered to provide services to Clients, in exchange for payment.

154.    Plaintiff and Class members were required to provide their Private Information to the Defendant to receive benefits.

155.    In turn, Defendant impliedly promised to protect Plaintiff's and Class members' Private Information through adequate data security measures.

156.    Plaintiff and Class members would not have entrusted their Private Information to Defendant.

157.    Defendant materially breached its agreement(s) with its Clients by failing to safeguard such Private Information, violating industry standards necessarily incorporated in the agreement.

158.    Plaintiff and Class members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

159.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions

concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

160.    Defendant's conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract.

161.    The losses and damages Plaintiff and Class members sustained as described herein were the direct and proximate result of Defendant's breach of the implied contracts with them, including breach of the implied covenant of good faith and fair dealing.

## COUNT IV
### Invasion of Privacy
### (On behalf of the Plaintiff and the Class)

162.    Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

163.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

164.    Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

165. The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' Personal Information is highly offensive to a reasonable person.

166. Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

167. Defendant's failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

168. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

169. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Personal Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

170. As a proximate result of Defendant's acts and omissions, the private and sensitive Personal Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

171.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Personal Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

172.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Personal Information of Plaintiff and the Class.

173.    Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Personal Information.

174.    Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiff and all Class Members)

175.    Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

176.    Plaintiff and the other Class members gave Defendant their Personal Information believing that Defendant would protect that information. Plaintiff and

CLASS ACTION COMPLAINT

the other Class members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff's and the other Class members' Personal Information created a fiduciary relationship between Defendant on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of their clients, which includes safeguarding and protecting Plaintiff's and the other Class members' Personal Information.

177. Due to the nature of the relationship between Defendant and Plaintiff and the other Class members, Plaintiffs and the other Class members were entirely reliant upon Defendant to ensure that their Personal Information was adequately protected. Plaintiff and the other Class members had no way of verifying or influencing the nature and extent of Defendant or their vendors' data security policies and practices, and Defendant were in an exclusive position to guard against the Data Breach.

178. Defendant has a fiduciary duty to act for the benefit of Plaintiff and the other Class members upon matters within the scope of their relationship. They breached that duty by contracting with companies that failed to properly protect the integrity of the systems containing Plaintiff's and the other Class members' Personal Information, failing to comply with the data security guidelines set forth by HIPPA,

and otherwise failing to safeguard Plaintiff's and the other Class members' Personal Information that they collected.

179.   As a direct and proximate result of Defendant breach of its fiduciary duties, Plaintiff and the other Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their Personal Information which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Personal Information compromised as a result of the Data breach; (vii) loss of potential value of their Personal Information; (viii) overpayment for the services that were received without adequate data security.

## COUNT VI
### Violation of the California Unfair Competition Law
### [Cal. Bus. & Prof. Code § 17200, et seq. – Unlawful Business Practices]
### (On Behalf of Plaintiff and the California Subclass)

180.   Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

181.    Defendant violated Cal. Bus. and Prof. Code § 17200, et seq., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the Class.

182.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Class Members' Personal Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods for safeguarding the PII of Plaintiff and the Class Members.

183.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

184.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Defendant for the products and services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality

and privacy of their Personal Information, nominal damages, and additional losses as described herein.

185.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

186.   Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices, disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

### COUNT VII
**Violations of the California Consumer Records Act**
**Cal. Civ. Code § 1798.80, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

187.   Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

188.    Under the California Consumer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believes to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonable believes to have been, acquired by an unauthorized person." *Id.* (emphasis added).

189.    The Data Breach constitutes a "breach of the security system" of Defendant.

190.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

191.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited almost eight months to notify them. Given the severity of the Data Breach, this is an unreasonable delay.

192.    Defendant's unreasonable delay prevent Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

193.   Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

194.   Plaintiff and the class are entitled to equitable relief and damages in an amount to be determined at trial.

## COUNT VIII
### Declaratory Judgement
### (On Behalf of Plaintiff and the Class)

195.   Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

196.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

197.   An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer

injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

198.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII it possesses, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

    b.    Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

    c.    Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

199.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its customers' (i.e., Plaintiff and the Class') data.

200.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the

49

resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

201.   The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.

202.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class members, requests judgment against Defendant and that the Court grants the following:

A. For an order certifying the Class, as defined herein, and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or

disclosure of the Private Information of Plaintiff and Class members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

    iii.    requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

    iv.    requiring Defendant to implement and maintain a comprehensive information security program designed to

CLASS ACTION COMPLAINT

protect the confidentiality and integrity of the Private Information of Plaintiff and Class members;

v.    prohibiting Defendant from maintaining the Private Information of Plaintiff and Class members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.      requiring Defendant to conduct regular database scanning and
        security checks;

xiv.    requiring Defendant to implement, maintain, regularly review,
        and revise as necessary a threat management program designed
        to appropriately monitor Defendant's information networks for
        threats, both internal and external, and assess whether
        monitoring tools are appropriately configured, tested, and
        updated;

xv.     requiring Defendant to meaningfully educate all Class members
        about the threats that they face as a result of the loss of their
        confidential Private Information to third parties, as well as the
        steps affected individuals must take to protect themselves; and

xvi.    requiring Defendant to implement logging and monitoring
        programs sufficient to track traffic to and from Defendant's
        servers; and for a period of 10 years, appointing a qualified and
        independent third-party assessor to conduct an attestation on an
        annual basis to evaluate Defendant's compliance with the terms
        of the Court's final judgment, to provide such report to the
        Court and to counsel for the class, and to report any deficiencies
        with compliance of the Court's final judgment.

D. For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined by a jury at trial;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: July 30, 2024                Respectfully Submitted,

By: */s/ Andrew J. Shamis*
Andrew J. Shamis (AZ Bar No. 037343)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com

*Attorney for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT